LEMMON, Judge.
Mrs. Esther Coursey sued Gustave F. Treme, d/b/a Gus’s Bail Bonds, for the return of an $800.00 partial payment on the premium of a $50,000.00 bail bond furnished to accomplish the release from jail of plaintiff’s son, Charles Coursey. The trial court dismissed the suit, and plaintiff appealed devolutively.
Charles Coursey was arrested in Jefferson Parish on Thursday, May 29, 1969 and placed in the parish prison. A district judge set the bond for his release at $50,-000.00.
Coursey’s family employed an attorney at law to defend him, and the attorney in cooperation with a local bail bondsman began efforts to secure a reduction of the bond and the subsequent release of Coursey on a reduced bond.
Treme testified that on Friday morning he spoke to Coursey in jail. Learning that the family had employed an attorney and bondsman, Treme started to leave, whereupon Coursey pleaded for his help, since the other bondsman had accomplished nothing. Treme agreed to do what he could and left.
Later, after being unable to contact the attorney (Friday May 30 was a holiday), Treme called the jail and learned the Coursey family was there. Coursey’s wife, mother, sister and brother-in-law were just leaving the jail after a visit, and Treme requested that the wife be summoned to the telephone. After the telephone conversation, he came to the jail and met with the family.
Each member of the Coursey family testified that Treme represented himself as being associated with the bondsman employed by their attorney, although Treme denies this. In any event Treme informed them that the bond could not be reduced and that a premium of $5,000.00 was charged by insurance companies to furnish a $50,000.00 bond. Upon learning that they had only $800.00 immediately available, he had them wait while he went to speak to a district judge.
The judge (who testified in this case) had received a previous call from the desk sergeant at the jail. Coursey had been crying and was highly nervous and emotional and had been separated from the other prisoners.
Treme requested reduction of- the bond, but the judge refused because he was reluctant to reduce a high bond set by another judge (who was then unavailable). Treme then requested that his own personal surety bond be approved. The judge warned Treme of his personal responsibility to the extent of $50,000.00 and recommended against this procedure. However, Treme persisted and indicated that a regular commercial bond would be substituted shortly when the family could raise the balance of *347 the premium. Since the judge had known Treme since childhood and believed he was a good risk, and since there was some urgency about the situation (Coursey’s emotional condition and the three day holiday), the judge approved the bond, and Treme obtained Coursey’s release. Treme collected $800.00 from plaintiff and took a $4,200.00 promissory note signed by several members of the family.
However, the personal surety bond on which Coursey was released was defective in several particulars. First, Treme was a resident of Orleans Parish, but the bond was executed before a Jefferson Parish judge in violation of LSA-C.Cr.P. art. 325.[1] Second, the surety did not execute the affidavit required by LSA-C.Cr.P. art. 327.[2] Third, the surety was not worth, considering all of his property, the amount specified in the bond, as required by LSA-C.Cr.P. art. 324,[3] or anywhere near that amount.
When the attorney learned of the bond and determined its deficiencies, he realized that Coursey was subject to rearrest at any time and instructed Coursey to surrender himself, whereupon the bond was cancelled. Coursey was subsequently released on recognizance shortly thereafter by the same judge who originally set the bond.
When this suit followed for the return of the $800.00, Treme defended on the grounds that he had been employed to obtain Coursey’s release, which he had accomplished, and that he had subjected himself to liability on the bond. He therefore contended that the $800.00 had been earned.[4]
We do not agree. Treme was employed to furnish a bond upon which Coursey could be released from jail and remain out of jail pending trial. If the bond which Treme furnished was invalid and worthless, then Treme did not perform what he contracted to do.
Treme contends, however, that the personal surety bond was valid, because the judge waived the statutory requirements and approved the bond.
We hold that the statutory requirements in question are mandatory, and compliance is necessary for the validity of the bond. While the judge is allowed wide discretion in such matters as setting or reducing the amount of the bond, or to some extent in the matter of certifying the sufficiency of the surety, he has no discretion to dispense with such integral and essential matters as the worth of the surety. If these requirements were discretionary *348 rather than mandatory, the present case would indeed present a paradox in that the judge refused to reduce the bond below $50,000.00, but approved a personal surety with assets subject to execution far below this amount.
Since we hold the personal surety bond (which was cancelled four days after it was signed) invalid, we cannot allow Treme’s fee of $5,000.00, or any part therefor, for furnishing such a bond.
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of Mrs. Esther Coursey and against Gustave F. Treme in the full sum of $800.00 together with legal interest from the date of judicial demand, and all costs.
Reversed and rendered.

. LSA-C.Cr.P. art. 325 reads:
“When a surety resides in another parish in the state the bail bond shall be executed by the surety before a, judge of the parish in which he resides, who shall certify the sufficiency of the surety. It shall be made returnable to the court before which the accused is ordered to appear, and all proceedings to enforce the bond shall be had in that court.” (Emphasis supplied).

. LSA-C.Cr.P. art. 327 reads:
“A personal surety shall execute an affidavit that he possesses the sufficiency and qualifications prescribed by Article 324 and that he is not disqualified from becoming a surety by Article 326. The affidavit shall list the number and amount of undischarged bail bonds, if any, entered into by the surety. The officer accepting the bail may require the surety to state in his affidavit the nature and value of his property not exempt from execution, and the amount of his liabilities. An officer authorized to accept the bail shall have authority to administer any affidavit required of the person signing a bail bond.”

. LSA-C.Cr.P. art. 324 reads:
“A personal surety must be a citizen and resident of Louisiana, and worth, considering all his property whether movable or immovable, the amount specified in the bail bond. The worth of the surety shall be exclusive of the amount of any other bail bond on which he may be principal or surety, exclusive of property exempt from execution, and over and above all his other liabilities. When there is more than one surety the above requirements shall apply to their aggregate worth.” (Emphasis supplied).

. After this suit was filed, Treme filed a separate suit on the $4,200.00 promissory note, which plaintiff did not sign.